IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| JOHN PATRICK RAYNOR, | ) | |
| | ) | CASE NO. BK04-83112 |
| Debtor(s). | ) | A06-8087 |
| MID CITY BANK, a Nebraska state bank, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| DOWNEY LAND LIMITED, a California limited partnership, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM

This matter is before the court on cross-motions for summary judgment by the plaintiff (Fil. #36) and the defendant (Fil. #45). Patrick Heng represents Mid City Bank, and Jerrold Strasheim represents Downey Land Ltd. The motions were taken under advisement as submitted without oral arguments. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B) and (K).

I. Background

Downey Land Limited ("Downey") owns real estate in Downey, California. A health club, owned by Weber Enterprises, operated at the site. The debtor borrowed $975,000 from Mid City Bank for the limited liability company of which he was a member to acquire the health club in 1999. After reviewing the arrangement, Downey permitted the limited liability company to assume the lease. The bank later loaned additional money to the operation, but the business subsequently was unable to pay rent and closed in 2002. Litigation ensued in California on the debtor's personal guarantee of the lease and, after a trial which the debtor and his fellow L.L.C. members did not attend, a judgment was entered against the debtor. The judgment was registered in Nebraska. The debtor then filed the underlying bankruptcy case. Downey has filed a claim for $656,472.29 based on the California judgment. The bank is seeking equitable subordination of Downey's claim, asserting that Downey's misrepresentations and omissions caused the bank to finance the purchase of the business and caused the debtor to personally guarantee the business's lease, which neither would have done had Downey fully disclosed the physical condition of the building and the historical conduct of the health club's operator. The bank now moves for summary judgment in its favor, asserting that no factual issue exists as to Downey's inequitable conduct, while Downey also moves for summary judgment, asserting that it did not owe or breach a duty to the bank, did not

engage in inequitable conduct, and did not cause injury to the bank. Downey also argues that res judicata, collateral estoppel, or the *Rooker/Feldman* doctrine bar the bank's allegations.

## II. Legal standards

A.   Summary judgment

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005); Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004).

In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record. Widoe v. District No. 111 Otoe County Sch., 147 F.3d 726, 728 (8th Cir. 1998); Ghane v. West, 148 F.3d 979, 981 (8th Cir. 1998). A summary judgment motion should be interpreted by the court to dispose of factually unsupported claims and defenses. Tiffey v. Speck Enter., Ltd., 418 F. Supp. 2d 1120, 1123 (S.D. Iowa 2006).

Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52. Moreover, although under Federal Rule of Civil Procedure 56 due deference must be given to the rights of litigants to have their claims adjudicated by the appropriate finder of fact, equal deference must be given under Rule 56 to the rights of those defending against such claims to have a just, speedy and inexpensive determination of the action where the claims have no factual basis. Celotex Corp. v. Catrett, 477 U.S. at 327.

B.   Equitable subordination

Equitable subordination of one claim in favor of another under 11 U.S.C. § 510(c) generally requires (1) some inequitable conduct by the claimant; (2) resulting in injury to other creditors or conferring an unfair advantage on the claimant; and (3) an outcome from the subordination that is not inconsistent with other provisions of the Bankruptcy Code. Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275, 1282 (8th Cir. 1988); Bala v. Kaler (In re Racing Servs., Inc.), 340 B.R. 73, 76 (B.A.P. 8th Cir. 2006). First, there has to be some showing of inequitable conduct. "Inequitable conduct has been regarded as a wrong or unfairness or, 'at the very least, a masquerade of something for what it is not.'" Jacoway v. Dept. of Treasury-IRS (In re Graycarr, Inc.), 330 B.R. 741, 749 (Bankr. W.D. Ark. 2005) (quoting In re Lifschultz Fast Freight, 132 F.3d 339, 344 (7th Cir. 1997)). Inequitable conduct typically falls into one of the following categories: (1) fraud, illegality, or breach of fiduciary duties; (2) undercapitalization; or (3) the creditor's use of the debtor as a mere instrumentality or alter ego. Graycarr at 749 (citing

Lifschultz at 344-45). In this case, the bank's assertions are made under the first category, focusing on fraud.

### III. Mid City Bank's motion for summary judgment

Mid City Bank asserts that when representatives of the limited liability company in which debtor was involved met with representatives of the defendant to perform due diligence, the defendant's personnel misrepresented the condition of the building, supported the previous tenant's misrepresentations of the business's financial success, and failed to disclose the defendant's assessment of the previous tenant's character. The limited liability company relied on Weber Enterprises' historical financial records in preparing a business plan and projecting cash flows during its operation of the business. The defendant required that such a business plan be submitted and approved before permitting the buyer to assume the building lease. The bank believes the defendant knew the historical figures were unreliable but intentionally did not advise the bank or the prospective purchaser of that because the defendant wanted to protect its interests and get someone on the hook who was able to pay rent.

A finding that equitable subordination is appropriate requires a factual inquiry. The principles of equitable subordination adopted in § 510 permit the court "to make exceptions to a general rule when justified by particular facts." United States v. Noland, 517 U.S. 535, 540 (1996). In the present case, factual disputes exist regarding what the bank knew at the time it made the loans, whether Downey's alleged representations affected the bank's decision, and whether Downey committed fraud. These issues cannot be disposed of on summary judgment, and will need to be tried.

### IV. Downey Land Limited's motion for summary judgment

Downey asserts in its motion for summary judgment that it owed the bank no duty and therefore could not have breached a duty which would give rise to a cause of action for equitable subordination. Downer further asserts that the debtor and the other members of the limited liability company could have and should have timely raised in the California litigation the issue of Downey's alleged conduct, and their failure to do so should preclude the bank from raising it now. Downey also takes the position that this court's dismissal of a previous adversary proceeding by the debtor against Downey, Weber Enterprises, and others, filed when the debtor was a Chapter 11 debtor-in-possession, should bar the bank's current claims through res judicata.

A.   Duty

As part of its argument for equitable subordination, the bank argues that Downey owed the limited liability company the contractual duties of good faith and fair dealing, and that because Downey allegedly knew the bank was financing the purchase, the bank was an "intended beneficiary" who suffered harm as a direct result of Downey's breach of those duties.

According to the Restatement (Second) of Contracts § 302 (1981),

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

The bank essentially is arguing that Downey was obligated to share its knowledge about the health club with the members of the limited liability company, and the bank is an intended beneficiary of that duty to inform. Under California law, the contract at issue must be expressly for the benefit of the third party. Cal. Civ. Code § 1559. A mere incidental beneficiary of the contract cannot enforce it. Neverkovec v. Fredericks, 87 Cal. Rptr. 2d 856, 865 (Cal. Ct. App. 1999). The contracting parties must have intended to confer a benefit on the third party. Id. There is no evidence in this case that the L.L.C. members and/or Downey intended to create a benefit for the bank by way of their lease assignment. Therefore, the bank is not an "intended beneficiary" with the ability to enforce any of the limited liability company's rights under the assignment, and Downey is entitled to summary judgment on this issue. However, this simply means the bank cannot proceed on a breach-of-duty theory. It does not affect the bank's right to go forward with its allegations of fraud and misrepresentations as inequitable conduct.

B. Claim preclusion and issue preclusion

1. California judgment

A final judgment by a court of competent jurisdiction on the merits of an action precludes the same parties or their privies from relitigating issues that were or could have been raised in that action. Ladd v. Ries (In re Ladd), 450 F.3d 751, 753 (8th Cir. 2006).

The full faith and credit requirement of federal law compels federal courts to accord a state court judgment the same preclusive effect it would have in a state court proceeding. 28 U.S.C. § 1738. Therefore, for the preclusive effect of the California judgment, this court looks to California law.

Res judicata is the umbrella doctrine which prohibits the relitigation of claims and issues which have been adjudicated in an earlier proceeding. Border Bus. Park, Inc. v. City of San Diego, 49 Cal. Rptr. 3d 259, 279 (Cal. Ct. App. 2006). Its primary component is claim preclusion, also known as res judicata, which operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. Its secondary component is issue preclusion, or collateral estoppel, which precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding. Id.

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them" Lincoln Prop. Co., N.C., Inc. v. Travelers Indem. Co., 41 Cal. Rptr. 3d 39, 44 (Cal. Ct. App. 2006) (quoting Mycogen Corp. v. Monsanto Co., 51 P.3d 297, 301-02 (Cal. 2002)).

"Collateral estoppel is one aspect of the broader doctrine of res judicata. Where res judicata operates to prevent relitigation of a cause of action once adjudicated, collateral estoppel operates to obviate the need to relitigate issues already adjudicated in the first action." Gottlieb v. Kest, 46 Cal. Rptr. 3d 7, 33 (Cal. Ct. App. 2006) (quoting Syufy Enter., L.P. v. City of Oakland, 128 Cal. Rptr. 2d 808 (Cal. Ct. App. 2002)).

Collateral estoppel will bar relitigation of an issue if a three-part test is met: (1) the issue previously decided is identical to the one sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior proceeding. Gottlieb, 46 Cal. Rptr. 3d at 33. The parties must have had a full and fair opportunity to litigate the issue, and the issue must in fact have been actually litigated. Id.

In the California lawsuit, Downey sued the debtor and his partners on the lease guarantee and obtained a judgment. Regardless of whether issues of fraud or misconduct by Downey could have been raised in that lawsuit, the preclusion doctrines require privity of the parties. Privity "refers to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights, [or] to a relationship . . . which is sufficiently close so as to justify application" of the estoppel doctrine. Gottlieb at 34. "In the final analysis, the determination of privity depends upon the fairness of binding [a party to the present proceeding] with the result obtained in earlier proceedings in which it did not participate. . . . Whether someone is in privity . . . requires close examination of the circumstances of each case." Id. (quoting Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n, 71 Cal. Rptr. 2d 77, 88 (Cal. Ct. App. 1998)). It is by no means clear at this stage of the case whether the bank can be regarded as having privity with the debtor for purposes of res judicata or collateral estoppel. As noted in the previous section, a number of factual issues exist regarding the bank's position, so a ruling now which would collaterally estop it, based on the California judgment, from pursuing its claims in this court would adversely affect its due process rights.

    2.  Nebraska litigation

Prior to the bankruptcy case being converted from Chapter 11 to Chapter 7, the debtor-in-possession filed an adversary proceeding (Adversary Proceeding No. A05-8012) against Downey, Weber Enterprises, the owners of those entities, and others alleging that the defendants participated in a conspiracy which prevented the debtor from adequately defending the California lawsuit, thereby depriving him of his civil and constitutional rights. That adversary proceeding was dismissed on the defendants' motion on July 11, 2005, after the bankruptcy case converted to Chapter 7, upon the Chapter 7 trustee's representation that he did not intend to pursue the claims raised in the adversary.

For collateral estoppel to bar subsequent litigation, the following four requirements must be met: (1) the issue must be identical to that involved in the prior proceeding; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. Kelly v. Armstrong, 141 F.3d 799, 801 (8th Cir. 1998).

The prior adversary proceeding was not litigated, so there is no preclusive effect to the dismissal of the case.

    C.    *Rooker-Feldman* doctrine

Downey argues that the *Rooker-Feldman* doctrine prohibits what it perceives as the bank's attempt to collaterally attack the California judgment. The *Rooker-Feldman* doctrine precludes lower federal court review of state court judgments. The doctrine "forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). "[W]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." Id. at 493 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)).

Here, the bank is attempting to equitably subordinate Downey's claim in the bankruptcy case. The bank is not challenging the merits of Downey's claim, which is predicated on the California judgment. Rather, the bank is arguing that for reasons of alleged inequitable conduct, any distribution on Downey's claim should occur after the bank's claim has been paid. The bank is exercising its rights under a section of the Bankruptcy Code. It is not attempting an end run around the California civil appellate process. Therefore, the *Rooker-Feldman* doctrine is inapplicable.

    V.  Conclusion

Mid City Bank's motion for summary judgment (Fil. #36) is denied because factual issues exist regarding whether equitable subordination of Downey's claim is appropriate under the circumstances. Downey Land Limited's motion for summary judgment (Fil. #45) is granted as to the issue of the absence of a duty owed to the bank, and denied in all other respects for the reasons explained above.

Separate order will be entered.

DATED:     November 16, 2006

                                                BY THE COURT:

                                                /s/ Timothy J. Mahoney
                                                Chief Judge

Notice given by the Court to:
    *Jerrold Strasheim
    *Patrick Heng
    Richard Myers
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.